IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| HEATHER BELLAMY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-06023-CV-SJ-GAF |
| | ) |
| BRADLEY D. LAW and | ) |
| WESTLUND DIESEL, INC., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Presently before the Court are Defendant Westlund Diesel, Inc.'s ("Westlund") Motion for Summary Judgment (Doc. #62), Defendant Bradley D. Law's ("Law") Motion for Partial Summary Judgment (Doc. #59), and Plaintiff Heather Michelle Cohen f/k/a Heather Bellamy's ("Plaintiff") Motion for Partial Summary Judgment (Doc. #64), all filed pursuant to Fed. R. Civ. P. 56 ("Rule 56"). For the following reasons, Westlund's Motion (Doc. #62) is GRANTED, Law's Motion (Doc. #59) is DENIED, and Plaintiff's Motion (Doc. #64) is GRANTED in part and DENIED in part.

## DISCUSSION

**I.    Facts**

The present case arises from the untimely death of Plaintiff's mother, Karen Ezzell ("Ezzell"). (Third Amended Complaint ("Compl.")). On or about February 29, 2008, Law's tractor-trailer[1] and Ezzell's 1999 Isuzu Rodeo collided on US Highway 169, approximately two miles north of St. Joseph in Andrew County, Missouri. *Id.* at ¶¶11-12. Law was returning to his farm after

---

[1]Law's tractor is a 1997 Peterbilt tractor and his trailer is a 2005 38.5 foot Merritt grain hauler. (MSHP Acc. Rpt., pp. 1, 6).

1

delivering his crop to a grain elevator, which he had routinely done since December 2004. (Law Depo., 22:10-15; Law Aff., ¶6). At some point after cresting a hill, Law noticed cars stopped at the bottom of the hill and immediately applied his brakes. (Law Depo., 38:9-16, 59:11-14). The brakes locked up, the tractor rotated in a counter-clockwise direction, and the tractor-trailer jack-knifed, which resulted in the tractor-trailer traveling left of the center line. (Goebelbecker Rpt., p. 2). Law's tractor-trailer collided with Ezzell's vehicle in her lane of traffic, the impact of which caused her injuries that ultimately lead to her death. (Compl., ¶17 incorrectly labeled as ¶11).

The accident report prepared at the scene and on the date of the accident lists "probable contributing factors" for the collision as (1) Law driving too fast for conditions, (2) Law's improper lane usage/change, and (3) Law's inattention. (MSHP Accident Report #02290801049 ("MSHP Acc.. Rpt."), p. 6). Plaintiff asserts these three factors along with Westlund's alleged negligent repair of the brakes on Law's tractor-trailer as causes of the accident. (Compl.).

In the location where the accident occurred, US Highway 169 is a north-to-south route consisting of a single asphalt roadway 23 feet wide and divided equally into two lanes. (MSHP Accident Reconstruction Report #08-0229H002-1 ("MSHP Expert Rpt."), p. 3). A double yellow line, which indicates the area is a no-passing zone, separates the two lanes. *Id.* Private drives leading to homes intersect with the highway. (Plaintiff's Resp., Ex. H). The speed limit for US Highway 169 is generally 60 miles per hour leading up to the area of the accident. (Law Aff., ¶5). However, the posted speed limit at the accident site is 50 miles per hour. (Law Depo., 10:15-18; MSHP Acc. Rpt., p. 1).

At the time of the collision, it was day-time, the weather was clear, and the road was dry. (MSHP Acc. Rpt., p. 6). Ezzell was traveling in the southbound lane while Law was traveling

2

northbound. (MSHP Expert Rpt., Attachment 2; MSHP Acc. Rpt., p. 6). Once Law crested the hill, nothing obstructed his view of the stopped vehicles ahead of him for at least 1000 feet. (Goebelbecker Rpt., p. 1).

Law testified he believed he was traveling at a speed of 50 miles per hour prior to applying his brakes. (Law Depo., 30:1-11, 32:12-15). The Missouri State Highway Patrol ("MSHP") experts and Law's expert, William Kennedy, opine Law was traveling at 61 miles per hour. (MSHP Expert Rpt., p. 16; Kennedy Rpt., p. 2). Plaintiff's expert, John Goebelbecker, estimated Law's speed at 69 miles per hour. (Goebelbecker Rpt., p. 2).[2] The MSHP experts stated that if Law had been traveling at the speed limit of 50 miles per hour, he could have stopped prior to the impact area. (MSHP Expert Rpt., p. 18).

On March 3, 2008, Officer Kenneth Shewey of the MSHP Commercial Vehicle Enforcement Division inspected Law's tractor-trailer after the collision. (Shewey Depo., 5:11-14, 9:1-8). As part of his inspection, Officer Shewey examined the brakes of both the tractor and the trailer. (Shewey Depo., 10:22-11:8). He found, and listed as a violation, that the front right passenger brake on the tractor was out of adjustment, but he was not able to determine whether the brake was out of adjustment before the accident or as a result of the accident. (Shewey Depo., 11:21-12:17). Officer Shewey further determined the amount that the front right passenger brake was out of adjustment

---

[2] The experts based their respective speed estimations in part on skid marks made by Law's tractor-trailer. According to the MSHP, Law's tractor-trailer left a 307-foot skid mark. (MSHP Expert Rpt., p.14). Mr. Kennedy stated the skid mark was 201 feet long and Westlund's expert, Robert McKinzie, estimated the length of the skid mark as approximately 200 feet. (Kennedy Rpt., p.1; McKinzie Rpt., p. 4).

3

would not place Law's tractor out of service[3] even if that particular brake was out of adjustment prior to the accident. (Shewey Depo., 15:23-16:16). The MSHP experts did not specifically find the brakes of Law's tractor-trailer contributed to the cause of the accident. (MSHP Expert Rpt., p. 18). Subsequently, Mr. Goebelbecker, Mr. Kennedy, and Westlund's expert, Robert McKinzie separately inspected the brakes on Law's tractor-trailer. (Goebelbecker Rpt., p. 2; Kennedy Rpt., p. 2; McKinzie Depo., 62:17-23). Mr. Kennedy and Mr. McKinzie both determined the brakes worked properly. (Kennedy Rpt., p. 2; McKinzie Depo., 62:17-23). Mr. Kennedy also testified that the adjustment of a brake stroke can change with wear-and-tear but could not specify the amount of wear-and-tear required before a brake stroke comes out of adjustment. (Kennedy Depo., 72:1-17).

During his inspection, Mr. Goebelbecker found the brakes were not functioning properly and that the front right passenger brake on the tractor was out of adjustment. (Goebelbecker Rpt., p. 2). He stated in his report that because the left front brake was in adjustment, the unbalanced braking "contributed to the tractor rotating counter-clockwise into the oncoming traffic." *Id.* However, during his deposition, Mr. Goebelbecker testified that Law's inattention, failure to maintain control of his vehicle, failure to maintain proper look out, and traveling at an excessive speed was the cause of the collision. (Goebelbecker Depo., 86:8-21).

Westlund was the only mechanic to work on the components of the brakes on Law's tractor. (Law Aff., ¶9). The last time Westlund worked on the tractor-trailer's brakes was November 3, 2006. (Westlund's Statement of Facts ("WSOF"), ¶7). Additionally, Law's tractor-trailer was up-to-date on any state-mandated inspections and Law was unaware of any mechanical problems with his

---

[3]When a vehicle is determined to be "out of service," the vehicle is unsafe to operate on the highway. (Shewey Depo., 15:12-18).

4

tractor-trailer on the day of the accident. (Law Aff., ¶10; Law Depo., 80:4-18).

Law had a valid driver's license but did not have a commercial driver's license ("CDL"). (Law Depo., 53:18-20). To learn how to drive his tractor-trailer, which he used exclusively for hauling his crops to grain elevators, Law received instruction from neighbors and a person with a CDL, practiced driving with those individuals, and reviewed a CDL handbook available at the license bureau. (Law Aff., ¶2; Law Depo., 25:3-21). Prior to the accident at issue, Law had never received a traffic citation while driving his tractor-trailer. (Law Aff., ¶7). Additionally, he had no prior accidents operating his tractor-trailer, nor are there any previous circumstances of accidents, injuries, or death while Law was hauling crops. (Law Aff., ¶8). However, Law did receive a citation for exceeding the posted speed limit by eleven to fifteen miles per hour in a non-commercial vehicle approximately a year and a half prior to the accident. (Law Depo., 53:21-54:4; Law Casenet Rpt.). Law does not have any physical or mental disabilities and has never been on disability. (Law Depo., 71:4-5, 73:16-25). In the 24-hour period prior to the accident, he had not consumed any alcoholic beverages and was not on any prescription medicines other than a prescribed cough syrup. (Law Depo., 71:6-8, 17-22, 73:11-15). Further, he had several hours of sleep the night before the accident. (Law Depo., 90:9-19).

**II.     Standard**

Pursuant to Rule 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual

5

disputes that are irrelevant or unnecessary will not be considered. *Id.* Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (*citing Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 873 (8th Cir. 2005)).

In the absence of a factual dispute relating to an essential element of a party's claims, the Court will proceed to determine whether that party is entitled to judgment as a matter of law. *See E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001). In determining whether summary judgment is appropriate, the Court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

**III. Analysis**

*A. Westlund's Motion*

Under Missouri law, Plaintiff must prove the following to establish her negligence claim against Westlund: (1) Westlund had a duty to protect Plaintiff from injury; (2) Westlund failed to perform that duty; and (3) its failure proximately caused injury to Plaintiff. *Lopez v. Three Rivers Elec. Co-op.*, 26 S.W.3d 151, 155 (Mo. 2000) (en banc) (*citing Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. 1990) (en banc)). "Whether a duty exists is purely a question of law." *Id.* (*citing Aaron v. Havens*, 758 S.W.2d 446, 447 (Mo. 1988) (en banc)).

While Missouri courts have held that mechanics owe a duty to the public to use reasonable care in the repair of vehicles, *see Cent. & S. Truck Lines, Inc. v. Westfall GMC Truck, Inc.*, 317 S.W.2d 841, 845-46 (Mo. Ct. App. 1958), Plaintiff cites no cases indicating a mechanic has an

6

ongoing duty to maintain a vehicle that is not under its control. Accordingly, the question here is whether Westlund breached its duty when working on Law's tractor-trailer brakes on November 3, 2006 and whether that breach proximately caused Plaintiff's injury.

The accident occurred on February 29, 2008, some sixteen months after Westlund's last service on the tractor-trailer's brakes. The only evidence in the record supporting Plaintiff's claim that Westlund breached its duty of reasonable care when servicing the brakes is that, after the accident, the front right passenger brake on Law's tractor was out of adjustment. Plaintiff provides no expert testimony regarding normal wear-and-tear of tractor-trailer braking systems and whether the amount Law's brake was out of adjustment was unreasonable and due to Westlund's alleged unreasonable care in working on the brakes sixteen months earlier. *See Parra v. Bldg Erection Servs.*, 982 S.W.2d 278, 285 (Mo. Ct. App. 1998) (discussing when expert testimony is required).[4] Even assuming the brakes were out of alignment on November 3, 2006 when Law's tractor-trailer left Westlund's control, Plaintiff's own expert testified Law's alleged negligent driving caused the accident. Based on this tenuous evidence, Plaintiff cannot establish Westlund breached its duty or that the unadjusted brake proximately caused the accident. Westlund's Motion for Summary Judgment is therefore GRANTED.

B.      *Law's Motion*

Law requests summary judgment on Plaintiff's claim for damages for aggravating circumstances, which are the equivalent of punitive damages in a wrongful death action. *Call v. Heard*, 925 S.W.2d 840, 849 (Mo. 1996) (en banc) (citation omitted). Punitive damages are

---

[4]Contrary to Plaintiff's assertion, expert testimony regarding the wear-and-tear of tractor-trailer braking systems would be required in this case as lay persons may not be familiar with the functioning of such braking systems.

7

extraordinary and harsh and are imposed for the purpose of punishment and deterrence. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110-11 (Mo. 1996) (en banc) (citations omitted). Accordingly, Plaintiff must present clear and convincing evidence to support such a claim. *Lopez*, 26 S.W.3d at 160 (*citing Rodriguez*, 936 S.W.2d at 111).

"Ordinarily [punitive] damages are not recoverable in actions for negligence, because negligence, a mere omission of the duty to exercise care, is the antithesis of willful or intentional conduct." *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods. Inc.*, 700 S.W.2d 426, 435 (Mo. 1985) (en banc) (citations omitted). Nevertheless, "when the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury," punitive damages may be appropriate in a negligence action. *Id.* at 436 (collecting cases). "The defendant's conduct must be tantamount to intentional wrongdoing where the natural and probable consequence of the conduct is injury. With such a showing, a plaintiff can recover for aggravating circumstances based upon the defendant's complete indifference to or conscious disregard for the safety of others." *Lopez*, 26 S.W.3d at 160 (citations omitted).

> Weighing against submission of punitive or aggravating circumstances damages are circumstances in which: prior similar occurrences known to the defendant have been infrequent; the injurious event was unlikely to have occurred absent negligence on the part of someone other than the defendant; and, the defendant did not knowingly violate a statute, regulation, or clear industry standard designed to prevent the type of injury that occurred.

*Id.* (citations omitted). When determining whether to grant summary judgment on a punitive damages issue, the Court must give full play to the jury's right to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *Peters v. Gen. Motors Corp.*, 200 S.W.3d 1, 25-26 (Mo. Ct. App. 2006).

Here, when viewing the facts in the light most favorable to Plaintiff, Law was driving a

tractor-trailer over the posted speed limit by eleven to nineteen miles per hour through a residential area while not paying attention to traffic ahead of him. Giving full play to the jury's right to determine the facts, the evidence may persuade a jury in a clear and convincing manner that Law acted with complete indifference or conscious disregard to the rights of others such that he would know or have reason to know there was a high degree of probability his conduct would result in injury. Accordingly, the Court DENIES Law's Motion.[5]

*C.     Plaintiff's Motion*

Plaintiff seeks summary judgment on two issues: (1) that Ezzell did not contribute to the cause of the accident; and (2) that Law was negligent. (Doc. #64). Law did not oppose a finding that Ezzell does not bear any fault for the collision and therefore summary judgment is GRANTED with regard to this issue. *See, e.g., United States v. NHC Health Care Corp.*, 163 F. Supp. 2d 1051, 1058-59 (W.D. Mo. 2001). On the other hand, Law did oppose Plaintiff's request for summary judgment on the issue of his negligence.

As stated previously, a plaintiff must prove the following to establish a negligence claim: (1) the defendant had a duty to protect the plaintiff from injury; (2) the defendant failed to perform that duty; and (3) that failure proximately caused the injury. *Lopez*, 26 S.W.3d at 155 (*citing Krause*, 787 S.W.2d at 710). Missouri courts have consistently held that violation of a statutory traffic regulation is negligence per se. *See Bentley v. Crews*, 630 S.W.2d 99, 106 (Mo. Ct. App. 1981) (collecting cases). Nevertheless, "traffic regulations are not unyielding and inflexible and are

---

[5]Law also argues the Fourteenth Amendment bars punitive damages in this case. As Plaintiff correctly points out, contrary to Law's position, the factors set forth in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), apply to courts reviewing the reasonableness of a punitive damages award and do not qualify the Court's ability to submit the issue of punitive damages to the jury.

9

not to be applied rigidly, absolutely and preemptorily without regard to circumstances or conditions." *Id.* (*citing George v. Wheeler*, 404 S.W.2d 426, 430 (Mo. Ct. App. 1966)). "The sensible application of the qualification simply permits the violation of a regulation to be excused or justified by circumstances or conditions contemplated by the regulation." *Id.* (citations omitted). In practical terms, this means a judgment "may not be rendered against a violator unless he has had an opportunity to present his justification or excuse for violating the regulation." *Id.* (citations omitted). However, this "does not change the injured party's method of submitting his case to the jury." *Id.* (citations omitted). The violation of the regulation is tantamount to a breach of a duty or negligence as a matter of law. *Id.* Therefore, the only issue submitted to the jury is whether the violation resulted in the injury. *Id. See also* MAI[6] §§17.13, 17.17, 20.01, 20.02 (6th Ed. 2002).

In Missouri, vehicles must be driven on the right half of all public roads or highways. Mo. Rev. Stat. § 304.015.2. Additionally, "[e]very person operating a motor vehicle on the roads and highways of [Missouri] shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care." Mo. Rev. Stat. § 304.012.1. "The highest degree of care is defined as that degree of care that a very careful person would use under the same or similar circumstances." *Crane v. Drake*, 961 S.W.2d 897, 901 (Mo. Ct. App. 1998) (internal quotation marks and citations omitted).

Here, disputes remain as to whether Law was speeding just prior to or at the time of the accident and therefore the Court cannot find Law negligent per se as to this issue. Further, although there is no dispute Law's tractor-trailer crossed the center line and collided with Ezzell's vehicle in her lane of traffic, he is still entitled to excuse or justify his violation of § 304.015.2 and submit to

---

[6]MAI refers to Missouri Approved Jury Instructions.

10

the jury whether his violation of this statute resulted in Ezzell's death. Summary judgment is therefore DENIED as to Law's negligence.

## **CONCLUSION**

Plaintiff cannot demonstrate Westlund breached any duty of reasonable care and cannot show an issue with the brakes was a proximate cause of the accident. Westlund's Motion is therefore GRANTED. However, Plaintiff may be able to prove damages for aggravating circumstances against Law are appropriate in this case. Thus, Law's Motion is DENIED.

Further, Plaintiff's Motion is GRANTED with regard to Ezzell's fault in causing the collision. Factual disputes regarding Law's speed just prior to or at the time of the accident remain and Missouri law permits Law to justify or excuse his violation of Mo. Rev. Stat. § 304.015. Therefore the Court DENIES Plaintiff's Motion for a finding that Law was negligent.

**IT IS SO ORDERED.**

s/ Gary A. Fenner<br>
Gary A. Fenner, Judge<br>
United States District Court

DATED: May 26, 2009

11